## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| METROPOLITAN BREWING, LLC, | ) Case No. 23-13209 |
| | ) |
| Debtor. | ) Honorable Deborah L. Thorne |
| | ) |

### <u>NOTICE OF MOTION</u>

TO: See attached list

**PLEASE TAKE NOTICE** that on October 5, 2023, at 3:00 p.m. (prevailing Central Time), I will appear by Zoom, or in person, before the Honorable Deborah L. Thorne, United States Bankruptcy Judge, or any judge sitting in for such judge, in Courtroom 682 at 219 South Dearborn Street, Chicago Illinois 60604 and present the ***Debtor's Emergency Motion Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Entry of Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Scheduling Final Hearing; and (C) for Related Relief*** (the "*Motion*"), a copy of which is attached.

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 160 9362 1728, and there is no passcode. The meeting ID can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

Dated: October 3, 2023                          Respectfully submitted,

   /s/ Matthew E. McClintock

**GOLDSTEIN & MCCLINTOCK LLLP**
Matthew E. McClintock, Esq. (Atty. No. 6280574)
Jeffrey C. Dan, Esq. (Atty. No. 6242750*)*
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310
mattm@goldmclaw.com
jeffd@goldmclaw.com

*Proposed counsel for the Debtor and*
*Debtor-in-Possession*

2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| METROPOLITAN BREWING, LLC, | ) | Case No. 23-13209 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Deborah L. Thorne |

**DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 4001**
**FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE**
**OF CASH COLLATERAL; (2) SCHEDULING FINAL**
**HEARING; AND (3) FOR RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "*Debtor*"), by and through its

proposed undersigned counsel, hereby moves this Court (the "*Motion*") for entry of interim and

final orders pursuant to sections 361 and 363 of title 11 of the United States Code (the "*Bankruptcy*

*Code*") and Rule 4001 of the Federal Rules of Bankruptcy: (1) authorizing the Debtor to use cash

collateral pursuant to the budget attached hereto as Exhibit A (the "*Budget*"); (2) scheduling a final

hearing on the Motion; and (3) for other related relief as necessary. In further support of this

Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 361 and 363 of the

Bankruptcy Code and Bankruptcy Rule 4001.

**RELEVANT BACKGROUND**

4.      On October 3, 2023 (the "*Petition Date*"), the Debtor filed a voluntary petition in this Court for relief for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), thereby commencing the above-captioned bankruptcy case (this "*Chapter 11 Case*").  The Debtor continues to operate its businesses and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Metropolitan is a well-known and well-loved brewery located in a large commercial property (the "*Property*") overlooking the North Branch of the Chicago River at 3057 N. Rockwell Street. Tracy and Doug Hurst founded the brewery in 2007. The brewery focuses on brewing German-style beers including well-known brands such as its "Krankshaft Kölsch" and "Flywheel Pilsner."

6.      Additional background on the Debtor and the circumstances of the Chapter 11 Case can be found in the declaration of Tracy Hurst filed contemporaneously herewith and is incorporated herein by reference.

7.      The Debtor's bankruptcy filing resulted in large part from issues regarding disputes surrounding its lease for its taproom and production facility, a downturn in the brewing business and unsustainable debt level in excess of the value of its equipment.

8.      In bankruptcy, the Debtor is seeking to maximize outcomes for creditors by confirming a plan that will either: (a) reorganize its debt under its lease and with its equipment lenders; (b) effectuate a sale of the company as an ongoing operating business; or (c) liquidate the assets to maximize value from sale proceeds to pay creditors.  The foregoing, as it may change and evolve as the Chapter 11 Case plays out, shall be referred to herein as the "Restructuring."

9.      The Debtors need to maintain operations and pay bankruptcy-related costs to accomplish the Restructuring. The anticipated costs and revenues for Debtor through the end of October, 2023 (the "*Budget Period*") are reflected in the Budget.

## DISCUSSION

### *The Debtor's Capital Structure*

10.     The Debtor's senior secured lender is Live Oak Banking Company ("*Live Oak*"), which issued a United States Small Business Administration ("*SBA*") loan to the Debtor on November 12, 2015. The Debtor understands that Live Oak asserts that it was owed approximately $1,005,418 as of October 2, 2023 and asserts a security interest in substantially all of the Debtor's assets to secure the obligations.

11.     As of the Petition Date, the Debtor's primary assets generally consisted of the following (values here are from the recent appraisal attached to the Hurst Declaration or in the case of accounts receivable and cash, from October 2, 2023, just before the Petition Date):

| Asset | Estimated Liquidation Value | Description |
|---|---|---|
| Machinery & Equipment | $720,600 | *See* appraisal attached to the Hurst Declaration |
| Furniture & Fixtures | $6,500 | *See* appraisal attached to the Hurst Declaration |
| Company Vehicle | $8,428 | |
| Accounts Receivable | $10,154 | Largely distribution (non-taproom) sales |
| Cash – Operating | $27,218 | |
| Cash – Money Market | $63,755 | |
| Inventory | $0 | TBD, the Debtor's beer inventory only has any value in a going-concern scenario. |
| **Total** | **$836,655** | |

12.     The Debtor's understanding, however, is that Live Oak (a) is not in first position on certain of the Debtor's assets and (b) does not have a perfected lien on other assets. For example:

- PNC (defined below) appears to have a first position purchase money security interest on and be under-secured with respect to the Debtor's $165,000 Canning Line Assets (defined below). The

3

Canning Line assets are part of the "Machinery & Equipment" value above, so for $165,000 of the $720,600 in Machinery & Equipment, it appears Live Oak is in second position;

- Live Oak is not listed on the title for the company vehicle (and thus would not have a perfected lien on same);

- Only cash in the Debtor's operating account could have been generated from the sale of inventory within 20 days of the Petition Date (Live Oak does not have an account control agreement that I am aware of, and the Debtor's accounts are at PNC, not at Live Oak). The funds in the money market account have been in that account for many months, and are primarily the proceeds of employee retention credits received by the Debtor. Accordingly, the Debtor understands that to the extent Live Oak has a lien on cash as a result of it being proceeds of its collateral, the lien would be limited to the amount of cash in the operating account as of the Petition Date (at the most).

13.     Based on the foregoing, it appears that the maximum value of the collateral Live Oak could have a first-priority lien on would be approximately $599,472 (making Live Oak substantially under-secured). *See* 11 U.S.C. § 506(a)(1).

14.     The SBA issued an Economic Impact Disaster Loan ("*EIDL Loan*") to the Debtor on May 22, 2020. The balance as of the Petition Date was approximately $386,454.  The SBA asserts a second-priority security interest in the same collateral as Live Oak (subject to the same issues as noted above). As the value of the Live Oak's claim materially exceeds the value of the collateral securing it, the EIDL Loan is unsecured. *Id.*

15.     PNC Bank, National Association ("*PNC*") issued an equipment loan to the Debtor on March 13, 2023 (the "*PNC Equipment Loan*") to help the Debtor purchase a canning line and related assets (the "*Canning Line Assets*"). The Debtor understands that PNC asserts that it was owed approximately $181,258 on the PNC Equipment Loan as of the Petition Date and appears to assert a first position purchase money security interest (the "*PNC PMSI*") in the Canning Line Assets. The value of the Canning Line Assets was approximately $165,000 as of the Petition Date.

4

*See* appraisal, <u>Exhibit A</u> to the Hurst Declaration. PNC also appears to assert via its UCC-1 financing statement a lien on the "proceeds" of the Canning Line Assets, but it is not clear what this would be or how it would be senior to the Live Oak liens (the Debtor takes no position on this).

16.    In sum, it appears that most likely only Live Oak Bank has a lien on the Debtor's cash, but that any such lien would only potentially be perfected with respect to cash in the Debtor's operating account. PNC does appear to have a senior lien on a canning line that the Debtor will be continuing to use in its operations, and alleges a lien on the "proceeds" of same.

### ***Need to Use Cash Collateral***

10.    As explained above, the Debtor has an immediate and urgent need to use cash collateral (as that term is defined in section 363 of the Bankruptcy Code, the "*Cash Collateral*") of Live Oak (and PNC if and to the extent applicable) in order to assure the orderly administration of its bankruptcy case. Without use of the Cash Collateral in accordance with the Budget, the Debtor will not be able to pay its employees, operating expenses, and Restructuring costs. Inability to use the Cash Collateral on an expedited basis will likely result in an immediate cessation of the ongoing operations of the Debtor's business and will cause irreparable harm to the Debtor's estate. Put simply, the Debtor cannot continue operations and its Restructuring efforts absent use of the Cash Collateral. Although this Motion is not being filed on an "emergency" basis, by the time it is heard there will undoubtedly be vital payments that need to be made immediately, and the Debtor will be close to needing to fund its next payroll.

11.    Moreover, as explained above and in the Hurst Declaration, the Debtor believes that creditors – including Live Oak, PNC, and the EIDL – will come out economically better if the

Debtor is able to continue to operate while it pursues its Restructuring. For all these reasons, this Motion is being presented on an expedited interim basis.

### *Adequate Protection*

12.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. The Debtor is hopeful that Live Oak will have consented to interim Cash Collateral use by the time of the initial hearing, and the PNC will have consented to ongoing use of the Canning Line Assets.

13.     Even absent such consent, however, the Debtor respectfully submits that Cash Collateral use should be approved on an interim basis, and ultimately on a final basis, in each case in accordance with the Budget.

14.     Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. Although "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three non-exclusive examples of what may constitute adequate protection:

> (1)     requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

> (2)     providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or

> (3)     granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

15.     According to the legislative history, a finding of adequate protection is "left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principals." H.R. Rep. No. 595, 95th Cong., 2nd Sess. 339 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6295. *See MBank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396-97 (10th Cir. 1987) (stating that adequate protection should be measured on a "case by case basis"); *In re TeVoortwis Dairy, LLC*, 605 B.R. 833, 839 (Bankr. E.D. Mich. 2019) (Opperman, J.) (citing *O'Connor*). The purpose is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See O'Connor*, 808 F.2d at 1396; *see also TerVootwis Dairy*, 605 B.R. at 839 (recognizing same); *In re Planned Sys., Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987).

16.     Here, Live Oak is being adequately protected in multiple ways (as is PNC, as discussed below).

17.     **Continued Operations / Enhancement of Collateral Value.** As it continues to operate, the Debtor will be maintaining and repairing Live Oak and PNC's respective collateral.

18.     The cases are legion that a secured lender is adequately protected in connection with a debtor's proposed use of the lender's cash collateral if the cash will be used to maintain the lender's collateral, including for the payment of ongoing operating and other expenses necessary to maximize the value of the collateral. *See, e.g.*, *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984) (permitting the use of cash collateral where it was used to "protect, maintain, or enhance the collateral of [the secured lender]."); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) ("Allowing the Debtor to use [cash collateral] . . . will preserve the base that generates the income stream.").

7

19.     Here, the use of Cash Collateral will allow the Debtor to maintain the collateral of each lender and, most importantly, will allow the Debtor to continue to operate – which ultimately should result in a better Restructuring outcome (including for Live Oak and PNC). This is particularly true given that it is my understanding that this is not a good time to be liquidating brewery assets. If the Debtor shuts down, even achieving the numbers contained in the Appraisal may be difficult or impossible.

20.     **Replacement Liens**. As additional adequate protection for the Debtor's use of Cash Collateral hereunder, each of Live Oak and PNC, to secure payment of an amount equal to any diminution in the value of their respective collateral, a replacement security interest in and lien upon all assets of the Debtor upon which each respective lender had properly perfected liens pre-petition (*for the sake of clarity, not including any causes of action arising under the Bankruptcy Code*), senior to any other security interests, liens, or encumbrances, subject only to, in each case and in the following order of priority: (a) any lien on the Debtor's assets that the Court may approve in the future as being senior to Live Oak or PNC's liens on a particular asset or assets (with proper notice to Live Oak and PNC and an opportunity to object); (b) valid, perfected, and enforceable prepetition liens which were senior to the Live Oak and / or PNC liens or security interests as of the Petition Date, (c) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, and (d) the amount of the Debtor's professionals' fees and disbursements accrued as of the date of the termination of the Debtor's use of Cash Collateral after application of any pre-petition retainer (the foregoing liens, the "*Replacement Liens*").

21.     Pursuant to section 361 of the Bankruptcy Code, replacement liens in the nature of those provided by the Debtor can serve as adequate protection. 11 U.S.C. § 361(2); *see also TeVoortwis Dairy*, 605 B.R. at 839 ("Adequate protection can take different forms, including . . .

8

additional or replacement liens . . . .") (citing *O'Connor*, 808 F.2d at 1396–97); *In re HardRock HDD, Inc.*, 569 B.R. 443, 450 (Bankr. E.D. Mich. 2017) (recognizing same).

22.      **New Lien on Money Market Cash.** As discussed above, the Debtor maintains a money market account that no lender appears to have a perfected lien on). The Debtor uses this effectively as an internal line of credit, transferring funds to the operating account as necessary to cover losses in slower months (the Debtor's business is seasonal due to its expansive patio and riverside location). The Debtor proposes to grant Live Oak a lien on the cash in the money market account to secure payment of an amount equal to any diminution in the value of Live Oak's cash collateral, senior to any other security interests, liens, or encumbrances, subject only to, in each case and in the following order of priority: (a) any lien on the money market account that the Court may approve in the future as being senior to Live Oak's liens hereunder (with proper notice to Live Oak and an opportunity to object); (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, and (c) the amount of the Debtor's professionals' fees and disbursements accrued as of the date of the termination of the Debtor's use of Cash Collateral after application of any pre-petition retainer (the foregoing, the "*Additional Money Market Lien*").

23.      **Monthly Reporting**. As further adequate protection, within fourteen (14) days of the end of each month, the Debtor shall provide Live Oak and PNC with an "actual to budget" reconciliation of all inflows and expenses listed in the Budget for the preceding month.

### ***Emergency Interim Approval of the Use of Cash Collateral Should Be Granted***

24.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after service.  Upon request, however, the Court may conduct a preliminary expedited hearing on the

9

motion and authorize use of cash collateral on an interim basis to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b).

25.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct a preliminary expedited hearing as soon as practicable to enter the Proposed Interim Order authorizing the Debtor to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget attached to the Proposed Interim Order (subject to a 15% variance as set forth in the Proposed Interim Order) pending the final hearing.

26.     The ability of the Debtor to finance, through the use of Cash Collateral, its ongoing operations as it pursues the Restructuring is in the best interests of the Debtor, all of its creditors, and its estate.  The relief requested is necessary to avoid immediate and irreparable harm and prejudice to the estate and to all parties-in-interest in the Bankruptcy Case.

27.     The Debtor has an urgent and immediate need to use Cash Collateral to continue its business operations and pursue the Restructuring.  The Debtor's business will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the final hearing. In particular, the Debtor has to fund payroll by October 12, 2023, and even before that the Debtor has concerns about its ability to operate without being able to make day-to-day purchases (not being able to will certainly be detrimental). The Debtor also needs to make a pre-petition payment on its liquor liability insurance (to replace a check that bounced or will bounce as a result of the filing).

### ***Request for a Final Hearing***

28.     Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor respectfully requests that this Court set a date for the final hearing.  The Debtor requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first

class mail upon parties that filed UCC-1 financing statements against the Debtor, the United States

Trustee, the Debtor's twenty (20) largest creditors, and any party having filed a request to receive

service in the Chapter 11 Cases. The Debtor requests that the Court consider such notice of the

final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

## NOTICE

29.     The Debtor has provided notice of this Motion to the following parties or their

respective counsel by regular mail: (a) the United States Trustee; (b) the holders of the twenty (20)

largest unsecured claims against the Debtors; (c) all parties that had filed UCC-1 financing

statements against the Debtor; and (d) any party that has formally appeared and requested notice

pursuant to Bankruptcy Rule 2002. In addition, in light of the timing of the emergency hearing, the

Debtor will be providing additional notice to creditors by fax and email where possible (the Debtor

will file an updated certificate of service to reflect same). In light of the nature of the relief

requested, the Debtor submits that no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court (a) conduct an expedited

interim hearing; (b) enter an Interim Order substantially in the form submitted; (c) schedule a

final hearing; and (d) grant such further relief as may be equitable and just.

Dated: October 3, 2023                    Respectfully submitted,

                                          By: /s/ Matthew E. McClintock

                                          Matthew E. McClintock, Esq. (Atty. No. 6280574)
                                          Jeffrey Dan, Esq. (Atty. No. 6242750)
                                          **GOLDSTEIN & MCCLINTOCK LLLP**
                                          111 W. Washington Street, Suite 1221
                                          Chicago, IL 60602
                                          Telephone: (312) 337-7700
                                          Facsimile: (312) 277-2310
                                          mattm@goldmclaw.com
                                          jeffd@goldmclaw.com

11

*Proposed Counsel to the Debtor and*
*Debtor-In-Possession*

12

## CERTIFICATE OF SERVICE

I, Matthew E. McClintock, the undersigned attorney, hereby certify that on October 3, 2023, I caused a copy of the ***Debtor's Emergency Motion Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Entry of Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Scheduling Final Hearing; and (C) for Related Relief*** to be served via first class U.S. Mail as indicated below.

/s/ Matthew E. McClintock

## SERVICE LIST

Patrick S Layng
Office of the U.S. Trustee,
Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Illinois Department of
Revenue
Bankruptcy Section
P.O. Box 64338
Chicago, IL 60640

Illinois Department of
Revenue
PO BOX 19005
Springfield, IL 62794

Cook County Treasurer
118 North Clark Street
Room 112
Chicago, IL 60602

PNC Bank, N.A.
222 Delaware Avenue
Wilmington, DE 19801
Attn: Business Banking

PNC Bank, N.A.
249 Fifth Ave, MS

P1-POPP-BL-7
Pittsburgh, PA 15222

Live Oak Banking
Company
c/o Reid H. Harbin, Esq.
Harbin & Miller, LLC
5591 Chamblee Dunwoody
Road
Bldg. 1300, Ste. 300
Dunwoody, Georgia 30338

Live Oak Banking
Company
1741 Tiburon Drive
Wilmington, NC 28403

U.S. Small Business
Administration
2 North Street, Suite 320
Birmingham, AL 35203

Rockwell Properties, LLC
c/o Prairie Management &
Development, Inc.
333 N. Michigan Ave.,
Suite 1700
Chicago, IL 60601-3981

Rockwell Properties, LLC
c/o Jason M. Metnick
Meltzer, Purtill & Stelle
LLC
125 South Wacker Drive,

Suite 2900
Chicago, IL 60606

RPS Des Moines
P.O. BOX 4095
Clinton, IA 52733

Tricor, Inc.
600 Star Brewery Dr.
Suite 110
Dubuque, IA 52001

Society Insurance
150 Camelot Drive
P.O. Box 1029
Fond du Lac, WI 54936

Illinois Casualty Company
225 20th Street
Rock Island, IL 61201

American Welding & Gas,
Inc.
6944 South Pulaski Ave.
Chicago, IL 60632

Brewers Supply Group
800 West 1st Ave.
Shakopee, MN 55379

Brewing Science Institute
106 Glen Dale Dr.
Woodland Park, CO 80863

Brotschul Potts, LLC
1 Tower Ln.
Suite 2060
Villa Park, IL 60181

Conrad Seipp Brewing
Company, LLC
2522 West Iowa Street
Apt. 1
Chicago, IL 60622

Green Bay Packaging
2200 Warrenville Rd.
Downers Grove, IL 60515

KegCraft
9000 W 67th St
La Grange, IL 60525

LEAF Capital Funding,
LLC
8100 Sandpiper Circle
Suite 300
Baltimore, MD 21236

McMaster-Carr
600 County Line Rd
Elmhurst, IL 60126

Peoples Gas Aon Center
200 E Randolph Street
Suite 5
Chicago, IL 60601

U.S. SBA loan EIDL
P.O. Box 3918
Portland, OR 97208

Vibrant Graphics
4066 N Port Washington
Rd.
Milwaukee, WI 53212

Williams Stroker &
Heating Co.
1823 W Belmont Ave.

Chicago, IL 60657