# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number: 23-13209 |
| Metropolitan Brewing, LLC | ) | |
| | ) | |
| | ) | Chapter: 11 |
| | ) | Honorable Deborah L. Thorne |
| | ) | |
| Debtor(s) | ) | |

## ORDER CONFIRMING PLAN OF LIQUIDATION

THIS MATTER COMING TO BE HEARD on the hearing on confirmation of the Debtor's Plan of Liquidation ("Plan") filed by Metropolitan Brewing, LLC, Debtor/Debtor-in-Possession ("Debtor"); proper notice having been provided as required by Rule 2002(b) of the Federal Rules of Bankruptcy Procedure; the Debtor having filed a Report of Balloting pursuant to Local Bankruptcy Rule 3018-1; Classes 1 and 2 having accepted the Plan as required by Sections 1129(a) and 1191 of the Bankruptcy Code; this Court having heard and considered the statements of Counsel on behalf of the Debtor relating to the confirmation of the Plan and the proffered testimony of the Debtor representative; this Court finding that the requirements of Section 1129(a) and 1191 of the Bankruptcy Code with respect to confirmation of the Plan have been satisfied, and that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims; and this Court being fully advised in the premises; NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

A. The Plan is amended as follows:

The Effective Date shall be 30 days from the date of the entry of this order or upon the filing of a Notice of Effective Date by the Debtor;

B. The Plan, a copy of which is attached to this Order, as amended herein, is hereby confirmed; and

C. This case is set for a post-confirmation status on March 13, 2024 at 10:45 a.m.

Enter:

Honorable Deborah L. Thorne
United States Bankruptcy Judge

Dated: January 31, 2024

**Prepared by:**
Counsel for the Debtor and Debtor-In-Possession
GOLDSTEIN & MCCLINTOCK LLLP
Matthew E. McClintock, Esq. (Atty. No. 6280574)
Jeffrey Dan, Esq. (Atty. No. 6242750)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310

Form 85 (20220119_bko)

mattm@goldmclaw.com
jeffd@goldmclaw.com

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| METROPOLITAN BREWING, LLC, | ) | Case No. 23-13209 |
| | ) | |
| *Debtor.* | ) | Honorable Deborah L. Thorne |

## <u>PLAN OF LIQUIDATION</u>

Dated: December 13, 2023

Respectfully submitted,

 /s/ Jeffrey C. Dan
Matthew E. McClintock, Esq. (Atty. No. 6280574)
Jeffrey Dan, Esq. (Atty. No. 6242750)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2310
mattm@goldmclaw.com
jeffd@goldmclaw.com

ATTORNEYS FOR DEBTOR

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| METROPOLITAN BREWING, LLC, | ) | Case No. 23-13209 |
| | ) | |
| *Debtor.* | ) | Honorable Deborah L. Thorne |

## PLAN OF LIQUIDATION

The Debtor hereby proposes the following Plan of Liquidation (the "*Plan*") pursuant to Sections 1121(a) and 1189 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* The Plan provides for distributions to Holders of Allowed Claims in accordance with the terms of the Plan.

As discussed in detail below, the Debtor was unfortunately not able to reach terms with its landlord on an amended lease that would have allowed the Debtor's brewery business to reorganize. As such, this Plan contemplates the Debtor ceasing operations. The Debtor is retaining a third-party auctioneer to effectuate an orderly liquidation of its assets (primarily brewing equipment). The net proceeds of that liquidation will be distributed to Holders of Allowed Claims as described herein.

All Holders of Claims and Equity Interests are encouraged to read the Plan carefully before voting to accept or reject the Plan.

## ARTICLE I
## BACKGROUND

### A.    Nature of the Debtor's Business

The Debtor owns a brewery located in a commercial property overlooking the North Branch of the Chicago River at 3057 N. Rockwell Street. Tracy Hurst and Doug Hurst founded the brewery in 2007. The brewery historically focused on brewing German-style beers including well-known brands such as its "Krankshaft Kölsch" and "Flywheel Pilsner."

### B.    Legal Structure and Ownership

The Debtor is an Illinois limited liability company. Doug Hurst and Tracy Hurst each own 29,000 units (each approximately 29% of the membership interests in the Debtor). The remainder is owned by approximately 19 smaller investors. *See* details at Docket No. 33.

### C.    History and Events Leading to the Bankruptcy

The Debtor had been successfully operating in its present location since mid-2017 (following several years of construction on the space). Gross revenue in 2022 was $2,156,123.

The brewery has unfortunately been struggling with three interconnected issues that together largely resulted in the bankruptcy filing.

**D.      History and Events Leading to the Bankruptcy**

Although the Debtor's tap room sales have generally been stable or increasing year over year (putting aside the pandemic), distribution numbers were disappointing, consistent with broader trends in the beer industry.

**1.      The Lease Dispute & Back Rent Claim**

For many years, basically since it moved into its present space, the Debtor has been in a dispute with its Landlord over the proper square footage of the space it rents and thus the proper amount of rent due under the lease. The genesis of that dispute is set forth in greater detail in Tracy Hurt's declaration filed at Docket No. 2.

The upshot of that long dispute is that the Landlord claims it is owed almost $2 million under the lease. Although the Debtor believed it could pay market rent going forward (and shared projections with the Landlord and other creditors), there was no possibility that the Debtor could "assume" the lease in bankruptcy (as assuming a lease requires "curing" any defaults thereunder). Moreover, relocating the brewery to another location was not realistic as the cost of moving would be cost prohibitive.

**2.      Unsustainable Debt Level**

The brewery's debt level was also unsustainable. The Debtor owes its lenders materially more than the liquidation value of the collateral. To reorganize it would have had to reduce its debt burden, which would likely have been possible if it could have reached a deal with its Landlord.

**E.      Developments in Bankruptcy & Decision to Close the Brewery and Liquidate**

In bankruptcy the Debtor negotiated cash collateral use with its lenders and other parties. It prepared three-year financial projections and engaged in good faith negotiations with the Landlord and its major creditors in an effort to reach agreement on a plan that could have restructured the brewery. In connection with that the Debtor had also obtained a soft commitment for a new friends and family investment that would have allowed the Debtor to emerge and implement a restructuring.

Unfortunately, however, the Landlord was not willing or able to reach agreement at a rent level that would have worked within the Debtor's financial projections. The Landlord's demands, including for significant cure payments on top of a rent demand that was already slightly above what the Debtor believed was feasible, were impossible to accommodate. The Debtor could not have accepted such demands and proposed a feasible restructuring plan.

As discussed above, the Debtor's ability to restructure was really contingent on reaching a deal with the Landlord. So when it became clear that such a deal was not possible, the Debtor, in close consultation with the Subchapter V Trustee and its secured lenders, pivoted to an orderly liquidation (a scenario it had been preparing for, but hoping not to have to effectuate).

Prior to the filing of this Plan, the Debtor filed a motion to retain the Liquidator to market substantially all of its assets and to sell them at auction. The Sale Proceeds generated from the Sale of the Debtor's assets will be distributed in accordance with this Plan. The Debtor is tentatively planning to close on or around December 17, 2023, and will be selling off as much of its beer inventory as possible through that date to maximize creditor recoveries. The Debtor is also considering offers for its intellectual property assets.

From a timeline perspective, the Debtor anticipates that the Liquidator will conduct the auction in January 2024 and that buyers will remove purchased equipment by the end of February 2024. The Debtor will be seeking approval of a wind-down cash collateral budget to allow that process to play out, which budget has been negotiated with the Debtor's secured creditors.

### F.  Debtor's Assets

### A.  Tangible Assets

As of the Petition Date, the Debtor's primary tangible assets generally consisted of the following (values here are from the recent appraisal attached as **Exhibit A**) or in the case of accounts receivable and cash, from October 2, 2023, just before the Petition Date):

| Asset | Estimated Value (actual liquidation values will vary) | Description |
|---|---|---|
| Machinery & Equipment | $720,600 | *See* appraisal attached hereto as Exhibit A |
| Furniture & Fixtures | $6,500 | *See* appraisal attached hereto as Exhibit A |
| Company Vehicle | $8,428 | To be sold once the Debtor has shut down. |
| Accounts Receivable | $10,154 | Largely distribution (non-taproom) sales |
| Cash – Operating | $33,738 | Cash will largely be depleted as the Debtor effectuates its orderly wind-down. |
| Cash – Money Market | $63,755 | Cash will largely be depleted as the Debtor effectuates its orderly wind-down. |
| Inventory | $0 | TBD, the Debtor will be trying to sell excess beer inventory from its taproom as part of the orderly wind-down. |
| **Total** | **$843,175** | |

### B.  Causes of Action

The Debtor is not aware of substantial avoidable transfers and does not expect to pursue causes of action at this time. The only transfers (other than salaries and wages or payments to secured creditors) are relatively small transfers to trade vendors, a breakdown of which was attached to Docket No. 36 (*see* Exhibit C). The Debtor reserves all rights to pursue claims, but presently does not anticipate doing so as it currently does not believe that doing so would improve creditor recoveries.

### G.    **Debtor's Liabilities**[1]

### A.    **Unsecured Claims**

The Debtor's Unsecured Claims primarily include: (a) trade creditors, equipment suppliers, service providers, keg rentals, and other operational liabilities (collectively scheduled for approximately $88,266); (b) U.S. Small Business Administration EIDL loan (the SBA has asserted a claim for $386,493); and (c) the Landlord's back rent claim (the landlord has informally asserted a claim of $1,968,326, that may change when it files a proof of claim). Based on the foregoing, the Debtor estimates its total unsecured claims pool at approximately $2,443,085.

### B.    **Priority Claims**

The Debtor is current on taxes and does not believe any material priority claims exist.

### C.    **Secured Claims**

The Debtor has several creditors that have made loans secured by equipment used in the Brewery. These can be summarized as follows (amounts are based on representations from secured creditors or claims filed):

| Creditor | Amount Asserted | Basis |
|---|---|---|
| Live Oak Bank | $1,027,059 | Proof of Claim 3-1 |
| PNC Equipment Finance | $219,899 | Sum of PNC's two filed proofs of claim, Claim Nos. 7-2 (equipment loan) and 8-1 (line of credit). |

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION
## OF TIME AND GOVERNING LAW

### A.    **Rules of Interpretation, Computation of Time and Governing Law**

1.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document, an exhibit to be Filed, or an exhibit already Filed, shall mean such document or exhibit, as it is or as it may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections,

---

[1] The Debtor reserves the right to object to any claim. The Debtor's use of a creditors asserted claim amount is not an admission that the Debtor agrees with the amount, but rather is an attempt by the Debtor to provide creditors with a sense of the amount of claims that it understands creditors are asserting.

Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

2.      Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to the principles of conflict of laws thereof.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form herein:

1.      **Administrative Claim**: A Claim for costs and expenses of administration of this Chapter 11 Case Allowed under section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code incurred after the Petition Date, including, but not limited to: (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, consulting, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor's Estate under section 1930, chapter 123 of title 28 of the United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.      **Administrative Claims Bar Date**: The date that is thirty (30) days after the Effective Date.

3.      **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Bankruptcy Code.

4.      **Allowed Claim**:  Allowed Claims are any Claim or Equity Interest, except as otherwise provided herein, which is:  (a) a Claim or Equity Interest that has been scheduled by the Debtor on its Schedules as other than disputed, contingent or unliquidated and as to which (i) the Debtor and no other party in interest has Filed an objection or (ii) no contrary proof of Claim has been Filed; (b) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been Allowed by a Final Order; (c) a Claim or Equity Interest that is Allowed:  (i) in any stipulation with the Debtor establishing the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtor

establishing the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim or Equity Interest that is Allowed pursuant to the terms of the Plan.

5.  **Allowed Secured Claim**: Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under §506 of the Bankruptcy Code.

6.  **Allowed Unsecured Claim**: An unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

7.  **Avoidance Actions**: Any and all claims and causes of action against any Entity arising under sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other section of the Bankruptcy Code.

8.  **Ballot:** Each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

9.  **Bankruptcy Code**: The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. § 101, *et seq*., as amended from time to time.

10.  **Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Illinois.

11.  **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

12.  **Bar Date**:  The deadline for filing proofs of claim in this Chapter 11 Case. The Court previously set the bar date as December 12, 2023.

13.  **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned  thereon.

14.  **Causes of Action:** Any claim, cause of action, chose in action, action, suit, demand, and any other debt, obligation, right, damage, remedy, controversy, agreement, promise, lien, variance, trespass, power, privilege, license, franchise, judgment, third-party claim, subrogation claim, guaranty claim, contribution claim, reimbursement claim, indemnity claim, counterclaim, right of setoff or recoupment, crossclaim, claim objection, defense to claim, and liability whatsoever of any kind or character relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise. Causes of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed

by law or in equity belonging to the Estate; (b) any claim pursuant to sections 362, 502, and 510 of the Bankruptcy Code and any analogous provisions of applicable state law belonging to the Estate; (c) all Avoidance Actions, including any claim, right or cause of action related to any and all Avoidance Actions (including, but not limited to, any fraudulent conveyance or fraudulent transfer claims the Debtor may have pursuant to sections 544, 548 and 550 of the Bankruptcy Code or applicable non-bankruptcy law); (d) any claim or defense including, but not limited to fraud, mistake, duress, and usury and any other defenses belonging to the Estate pursuant to section 558 of the Bankruptcy Code; and (e) any claim, right, or cause of action against any insiders, officers, directors, recipient of a fraudulent transfer, and/or related entities.

15.    **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Cite is the Debtor, commenced on the Petition Date and currently pending as Case No. 23-13209.

16.    **Claim**: Any "Claim" (as defined in section 101(5) of the Bankruptcy Code) asserted against the Debtor, including, but not limited to: (a) any right to payment against, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance, if such performance gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.    **Class**: A category of holders of Claims or Equity Interests which are substantially similar to the other Claims or Equity Interests in such class, as set forth in Article III of the Plan.

18.    **Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

19.    **Confirmation Date**: The date upon which the Bankruptcy Court shall enter the Confirmation Order on the docket in this Bankruptcy Case.

20.    **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

21.    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

22.    **Debtor**:  Metropolitan Brewing, LLC, the debtor-in-possession in this Chapter 11 Case.

23.    **Disputed Claim:** Any Claim or Equity Interest, or any portion thereof: (i) listed on the Schedules as unliquidated, disputed, or contingent; (ii) is the subject of an objection or request for estimation Filed or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) such Claim is in excess of the amount scheduled as other than disputed, contingent, or unliquidated; or (iv) is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

24.     **Distribution Address**: For each Holder, the address as set forth on the Debtor's Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on a timely filed proof of claim or some other writing Filed with the Bankruptcy Court and served upon the Debtor prior to a Distribution being effectuated.

25.     **Distributable Proceeds** means the Sale Proceeds and any remaining Cash from the Debtor's bank accounts.

26.     **Effective Date**: The thirtieth day following the entry of the Confirmation Order.

27.     **Entity**: A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee, or any other entity.

28.     **Equity Interest**: An ownership interest in the Debtor.

29.     **Estate**: The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon commencement of this Chapter 11 Case.

30.     **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

31.     **Final Decree**: The decree contemplated under Bankruptcy Rule 3022.

32.     **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

33.     **Holder**: Any Entity owning or holding a Claim or Equity Interest.

34.     **Impaired**: When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired withing the meaning of section 1124 of the Bankruptcy Code.

35.     **Insider**: A Person with the meaning set forth in section 101(31) of the Bankruptcy Code.

36.     **Landlord**: Rockwell Properties LLC.

37.     **Lien:** Any charge against or interest in property to secure payment of a debt or performance of an obligation.

38.     **Liquidator**: The professional retained by the Debtor with the approval of the Bankruptcy Court to conduct the auction and Sale of materially all of the Debtor's assets.

39.     **Person**: A "person" as defined in section 101(41) of the Bankruptcy Code.

40.     **Petition Date:** October 3, 2023, the date the chapter 11 petition for relief was

filed.

41.    **Plan:** This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

42.    **Priority Claim**: Any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

43.    **Priority Tax Claim**: Any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a) (8) of the Bankruptcy Code.

44.    **Professional**: Any Person or other Entity that either (a) has been retained in the Chapter 11 Case by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, potentially including, but not limited to: Goldstein & McClintock LLLP and the Subchapter V Trustee; or (b) seeks compensation or reimbursement of expenses in connection with this Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

45.    **Pro Rata:** means proportionately so that with respect to an Allowed Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

46.    **Sale:** the auction to be conducted pursuant hereto by the Liquidator whereby substantially all of the Debtor's assets will be offered for sale and any other non-ordinary course sales of assets conducted by the Debtor.

47.    **Sale Proceeds:** the proceeds the Debtor's estate received from the Sale.

48.    **Schedules**: The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

49.    **Secured Claim:** (a) a Claim is secured by a Lien on a property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

50.    **Secured Creditor**: Any Creditor that holds a Claim that is secured by property of the Debtor.

51.    **Secured Creditor Agreement** means the agreement of PNC Equipment Finance and Live Oak, as reflected in the final cash collateral order entered at Docket No. 81, that notwithstanding relative lien priorities and any other previous order of the Court, PNC shall have the senior claim to the following: (a) first, to the proceeds from the liquidation of the Debtor's

assets as identified by PNC's UCC Financing Statement; (b) then, to the remaining balance in the debtor's accounts to the extent they are not auction proceeds; and (c) then, to the next $70,000 of auction proceeds, to extent required to satisfy PNC's claims of $219,898.58, plus unpaid post-petition interest if PNC is over-secured. As to the remaining auction proceeds, Live Oak shall have the senior claim.

52.    **Subchapter V Trustee:** Matthew Brash, the trustee appointed pursuant to 11 U.S.C. § 1183(a).

53.    **Unsecured Claim**: Any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Claim, a Priority Claim, or an Equity Interest.

54.    **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 Case which is not a Secured Claim.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a Class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various Classes and describes the treatment each Class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in Classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan.

## 3.1    Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any Class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense

that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.  Administrative expenses will be paid from the proceeds of the Sale, cash and the proceeds from avoidance actions, as applicable.

There are several types of Administrative Expenses, including the following:

1.        If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.        If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed Claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.  Debtor is current post-petition with its expenses. This is estimated at $0 because the Debtor's cash collateral budget contemplates payment of these amounts in the ordinary course. |

| Administrative Tax Claims | $0 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim on the later of the Effective Date or the date on which such obligation becomes due in the ordinary course of business. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $2,124 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim on the date of the Effective Date. |
| Professional fees, as approved by the Bankruptcy Court | $66,088.50 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim within 3 business days after the court approves such professional fees and expenses on a final basis. Professional fees for Goldstein & McClintock LLLP will be paid out of a carve out agreed to by the Secured Creditors ($45,000) and from the pre-petition retainer it was holding when the case filed ($14,088.50). In addition the Debtor is expecting to request authority for the budgeted professional fees for final tax work in the approximate amount of $7,000. |
| Clerk's Office fees | $0 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim on the date of the Effective Date. |
| Other Administrative Expenses | $0 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim on the date of the Effective Date. |

| | | |
|---|---|---|
| Subchapter V Trustee | $6,500 | Payment through the Plan as follows: Cash equal to the amount of such Allowed Claim within 3 business days after the court approves such fees and expenses on a final basis. Subchapter V Trustee fees are to be paid out of a carve out from the Sale agreed to by the Secured Creditors. |
| TOTAL: | $74,712.50 | |

B.    Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Bankruptcy Code. Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  Debtor is unaware of any Priority Tax Claims.  To the extent that there are any Priority Tax Claims, said Priority Tax Claims will be paid within 3 business days of allowance of the claims on a final basis.  Payment will be made out of the proceeds of the Sale, in the order of priorities under the Bankruptcy Code.

**3.2    Classes of Claims and Equity Interests**

The following are the Classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general Unsecured Claim.

The following chart lists all Classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| Class 1 | Secured Claim of Live Oak Banking Company<br><br>Live Oak asserts a first priority security interest against all of Debtor's property, with the exception of the Debtor's canning line and cash, in which PNC Equipment Finance asserts senior security interest.<br><br>Amount: $1,027,059 as of Petition Date, per Live Oak's Proof of Claim. | Impaired | Treatment: The Debtor will pay up to the full amount of the claim from Distributable Proceeds in accordance with the Secured Creditor Agreement after payment of Administrative Claims as set forth above. |
| Class 2 | Secured Claim of: PNC Bank, National Association<br><br>PNC asserts a first priority security interest against the Debtor's canning line, a first priority lien on the Debtor's Cash, and a second priority security interest against all of the remainder of the Debtor's other property.<br><br>Amount: approximately $219,858.58 per PNC's proof of claim. | Impaired | Treatment: The Debtor will pay up to the full amount of the claim from Distributable Proceeds in accordance with the Secured Creditor Agreement after payment of Administrative Claims as set forth above. |

The source of the funds to pay the Claims of Claimants in Classes 1 and 2 will be from Distributable Proceeds, primarily the Sale Proceeds. To the extent that the proceeds from the Sale are insufficient to pay the full amounts of the Class 1 and 2 Claims, the remaining amount of said Claims will be treated as Class 3 Unsecured Claims.

The Class 1 Secured Claim is impaired. The Holder of the Class 1 Claim is entitled to vote on the Plan.

The Class 2 Secured Claim is impaired. The Holder of the Class 2 Claim is entitled to vote

on the Plan.

B.   **General Unsecured Claims**

Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Bankruptcy Code. The following chart identifies the Plan's proposed treatment of Class 3, which contains general Allowed Unsecured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| Class 3 | Unsecured Claims | Impaired | Each Unsecured Creditor will receive a Pro-Rata share of the remaining Distributable Proceeds after payment of Secured Claims, up to the full amount of the Claims. |

The Debtor does not expect the Distributable Proceeds to exceed the amount of the Class 1 and 2 Secured Claims and, in fact, expects that there will not be sufficient proceeds to pay the Secured Claims in full, resulting in the remaining amounts of the Class 1 and 2 Secured Claims to become Class 3 Unsecured Claims.  In that event, it is expected that there will be no payment to Unsecured Creditors.

The Class 3 Claims are impaired.  The Holders of Class 3 Claims are entitled to vote.

C.   Class of Equity Interest Holders

Equity Interest holders are parties who hold an ownership interest in the Debtor. In a limited liability company such as Metropolitan Brewing, LLC, the Equity Interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the Class of Equity Interest holders:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| Class 4 | Equity Interest Holders | Impaired | As Class 3 Claimants are not expected to receive any recovery, Class 4 Claimants will receive no recovery under the Plan. Existing equity interests will be deemed cancelled. |

The Debtor does not expect the proceeds of the Sale to exceed the amount of the Class 1 and 2 Secured Claims and, in fact, expects that there not be sufficient proceeds to pay the Secured Claims in full.  In that event, it is expected that there will be no payment to Class 4 Equity Interests.

The Class 4 Claims are impaired and as they are not expected to receive any recovery, they are deemed to reject the Plan and are thus not entitled to vote.

**ARTICLE IV**
**ALLOWANCE OF CLAIMS AND TREATMENT OF DISPUTED CLAIMS**

**4.1    <u>Claim Objections</u>**

The Debtor and other parties-in-interest may object to the amount or validity of any Claim within ninety (90) days after the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

**4.2    <u>Treatment of Executory Contracts and Unexpired Leases</u>**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases that have not already been assumed or rejected) and the impact such intentions would have on the other parties to the contracts.

At Confirmation, all Executory Contracts shall be rejected.  Any claimants that are parties to an Executory Contract with the Debtor, shall have thirty (30) days after the Confirmation Date to file a rejection claim. All rejection claims will be treated as Class 3 Unsecured Claims.

## ARTICLE V
## PLAN IMPLEMENTATION

**5.1   Means for Implementation of the Plan**

The Plan will be funded via the Distributable Proceeds, primarily expected to consist of the Sale Proceeds.  The proceeds from the Sale will be used to pay Creditors pursuant to the terms of the Plan. The Debtor expects that the Secured Claims will not be paid in full.  The amount paid will be determined by the sales price.  It is expected that there will not be any proceeds remaining to pay Unsecured Creditors.

On the Effective Date, all property of the Debtor other than the Distributable Proceeds, tangible and intangible, including, without limitation, licenses, intellectual property, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equity Interests except as provided in the Plan, Confirmation Order, or otherwise, to the Debtor. The Debtor expects there will be sufficient Cash on hand to make the payments required on the Effective Date.

On the Effective Date Doug and Tracy Hurst shall serve as the sole managers and members (50-50) of the Debtor in order to wind-up the Debtor, including filing final tax returns, amending corporate paperwork as needed, closing bank accounts, disposing of remaining assets, and ultimately dissolving the Debtor as and when they deem appropriate. Management shall serve in accordance with applicable non-bankruptcy law and the Debtor's limited liability company agreement, which they may amend as needed to effectuate the Plan.

Prior to the Effective Date the Debtor may file a notice of abandonment with respect to property that it intends to abandon, and any such property will be deemed abandoned.

Pursuant to §1146 of the Bankruptcy Code, the sale of the Debtor's property at the Sale, shall be under this Plan and the sale is being approved in order to implement this Plan.

**5.2   Payments**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor.  If the Plan is confirmed under §1191(b), payments to Creditors provided for in the Plan, will be made by the Subchapter V Trustee pursuant to §1194(a).  Once the Subchapter V Trustee's service is terminated under §1183(c)(1), pursuant to substantial consummation of the Plan, the Debtor shall make any Plan payments except as otherwise provided in the Plan or in the Confirmation Order.  Not later than 14 days after the Plan is substantially consummated, the Debtor will file notice of substantial consummation and serve said notice on all parties in interest.

**5.4   Tax Consequences of the Plan**

**CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

**5.5** **Projections in Support of the Debtors' ability to Make Payments Under the Proposed Plan**

The Debtor has provided projected financial information. Those projections are listed in **Exhibit B**. The projections are based on an estimated amount expected to be realized from the Sale.

## ARTICLE VI
## FEASIBILITY OF PLAN AND PLAN IMPLEMENTATION

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. Here, liquidation is proposed.

**6.1** **Post-Confirmation Distributions**

Once the Debtor's property is sold at the Sale, the Debtor or the Subchapter V Trustee shall make all distributions required by this Plan.

**6.2** **Post-Confirmation Avoidance Actions**

The Debtor or the Subchapter V Trustee shall have standing to file, prosecute, settle or dismiss any actions under §§541 through 553 of the Bankruptcy Code.

**6.3** **Ability to Fund Plan**

The Debtor believes that the Debtor will have enough Cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The proceeds from the Sale and other Distributable Proceeds will be used to pay the Secured Claims in Classes 1 and 2 and Administrative Claims. All remaining funds, if any, will then be used to pay Class 3 Unsecured Claims. The "Chapter 11" portion of liquidation analysis attached hereto as Exhibit B provides an estimate of what amounts will be available for distribution, and given the liquidating nature of the Plan, shall serve as the plan projections required by Bankruptcy Code Section 1190(1)(C). There will be no further operations of the Debtor and no future Plan payments after the payments are made on the Effective Date.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS**

## ARTICLE VII
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit B**. There are assumptions made in the liquidation analysis,

mainly: (a) liquidating furniture and equipment will generally provide a much lower value, therefore the value is assumed at twenty-five percent (25%) at liquidation; (b) in a Chapter 7 liquidation, a trustee would be appointed and would likely hire counsel to assist in liquidating the Debtor's assets which is added costs for the trustee and the trustee's counsel.

This liquidation analysis demonstrates that all Creditors will receive more pursuant to this Plan than under a Chapter 7 liquidation. Under a Chapter 7 liquidation, the only Creditors that would be paid are the Secured Creditors, and they would be paid less in a Chapter 7 liquidation than under the Plan.

## ARTICLE VIII
## GENERAL PROVISIONS

### 8.1    Title to Assets

If the Plan is confirmed under §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) all of the property of the estate shall vest in the Debtor, as of the Effective Date, free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If the Plan is confirmed under §1191(b), property of the estate includes, in addition to the property specified in §541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the Chapter 11 Case but before the Chapter 11 Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in §1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Subchapter V Trustee shall remain in possession of all property of the estate.

### 8.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 8.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 8.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under §1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to professionals and other Administrative

Expenses; (iv) to resolve all issues regarding Claim objections, and issues arising from the assumption/rejection of Executory Contracts, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

## 8.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 8.6    Modification of Plan

The Debtor may modify the Plan at any time before Confirmation of the Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including revoking the Plan.

If the Plan is confirmed under §1191(a) of the Bankruptcy Code, the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under §1191(b) of the Bankruptcy Code, the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the Bankruptcy Court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## 8.7    Section 1146 Exemption

Pursuant to §1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

## 8.8    Business Day

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

## 8.9    Notices

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following, or to such other addresses as Filed with the Bankruptcy Court:

**Debtors' Counsel:**
Matthew E. McClintock
Jeffrey C. Dan
**GOLDSTEIN & McCLINTOCK LLLP**
111 W. Washington Street, Suite 1221

Chicago, Illinois 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-3315
mattm@goldmclaw.com
jeffd@goldmclaw.com

**Subchapter V Trustee:**
Matthew Brash
Newport Advisors Corporation
5600 N. River Road, Suite 800
Rosemont, Illinois 60018
Telephone: (800) 306-1250
mbrash@newportadvisors.us

### 8.10    Filing of Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Any substantive changes that affect a creditor's position shall be subject to Court approval.

### 8.11    Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 8.12    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Illinois, without giving effect to the principles of conflicts of laws.

### 8.13    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

The Debtor believes that the Plan is fair and in the best interests of all Creditors.   The
Debtor recommends that all Creditors entitled to vote, vote in favor of Confirmation of the Plan.


Dated: December 13, 2023                Respectfully submitted,

                                        ___/s/ Jeffrey C. Dan_____
                                        Matthew E. McClintock, Esq. (Atty. No. 6280574)
                                        Jeffrey C. Dan, Esq. (Atty. No. 6242750)
                                        111 W. Washington Street, Suite 1221
                                        Chicago, IL 60602
                                        Telephone: (312) 337-7700
                                        Facsimile: (312) 277-2310
                                        mattm@goldmclaw.com
                                        jeffd@goldmclaw.com
                                        ATTORNEYS FOR DEBTOR

# EXHIBIT A



## Your Trusted Resource for Equipment Solutions since 1880

# APPRAISAL REPORT

**Prepared for:**



**Prepared in Reference to:**



**Report Date:**

**August 18, 2023**



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632) 773.548.4131

# Contents

APPRAISAL REPORT ......................................................................................................................... 1
Letter of Transmittal ..................................................................................................................... 3
Effective Date ................................................................................................................................ 3
Scope of Work ............................................................................................................................... 4
*Facility Condition Comments* ....................................................................................................... 5
*Equipment Condition Comments* ................................................................................................. 5
*Industry Comments* ..................................................................................................................... 5
*Opinions of Value* ........................................................................................................................ 6
Certification (as of 8/09/2023) ..................................................................................................... 7
Statement of General Assumptions and Limiting Conditions ....................................................... 8
*Hypothetical Assumptions* ........................................................................................................... 8
*Extraordinary Assumptions* ......................................................................................................... 8
Methodology: Valuation Definitions Provided in this Report ....................................................... 9
Valuation Approach ..................................................................................................................... 10
Your Project Team ....................................................................................................................... 11
Corporate Overview .................................................................................................................... 12


*Appendix A*                          *Appraisal Report*
*Appendix B*                          *Appraisal Photos*
*Appendix C*                          *Engagement Letter*

2



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632) 773.548.4131

## Letter of Transmittal

Goldstein and McClintock
111 W Washington St Ste 1221
Chicago, IL 60602
Attn: Matt McClintock

Dear Matt,

Thank you again for the opportunity to be of assistance to you and your client on this project. Pursuant to the attached executed engagement Letter between Loeb Appraisal and Goldstein and McClintock we have inspected the following facilities:

- ***3057 N Rockwell Street Chicago, IL 60618 United States***

## Effective Date

The effective date of valuation for this summary, USPAP Certified, Appraisal report is 8/9/2023 and the report date is 8/18/2023, which is intended for use only by Goldstein and McClintock for the intended use of financing.

Per our Engagement Letter, we have agreed to use the Market Value method of evaluation rather than the cost or income approaches.

All of the information gathered during this review process has been incorporated into the final asset list including any divulged leased, property of others or any other specifics. No other effort has been made to determine title, nor liabilities against the equipment. No financial reporting or data has been reviewed. All of the information given to us has been assumed to be correct and has been used in this report accordingly.

It is our pleasure to attend any business meetings, court hearings or provide expert witness testimony regarding this report. The appraisal fee for this report does not include this additional service which is available on a fee basis.

As previously stated in our Engagement Letter, any values provided are the opinion of the appraiser and cannot be interpreted as a guarantee of value. Loeb has valued the tangible personal property assets as presented in the Asset Listing contained within this report.

Loeb capitalizes on its day-to-day involvement actively by buying, selling and auctioning in the marketplace and has used this first-hand knowledge and data as the basis for this **Market Approach** appraisal. On occasions, we rely on other Used Equipment Dealers to provide information on sales they have had on similar equipment.

In regard to public auction sale or liquidation values the time required varies according not only to the weather conditions for any particular part of the country but also by seasonality of the industry. Our values assume that if the plant ceases production the utilities will be maintained properly on the premises to preserve the condition of the machinery and equipment.

The opinions of values stated in this report are based on the facility layout, makeup and utilization as inspected or presented. If certain assets are removed from this facility, the resulting decrease in value could be significantly more than the value of that particular item.

3



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)  773.548.4131

## Scope of Work

**Type of Assignment:** Appraisal Report

**Intended Users:** Goldstein and McClintock

**Intended Use:** To provide an unbiased opinion of value for the property in the listed assets assigned by Matt McClintock for the purpose of financing.

**Scope of Work:** On 8/9/2023, Howard Newman personally inspected the equipment located at 3057 N Rockwell Street Chicago, IL 60618. From the information provided I researched the relevant markets and using the Market (Sales Comparison) and Cost Approaches, provided an opinion of the Forced Liquidation Value of the items identified as of the Effective Date of 8/9/2023. Assets not Appraised or Included in this report, as stated in the Engagement Letter, are Office Furniture and Equipment, Computer Software and Hardware, Leased Items, Rented Items, Building Utilities, Leasehold Improvements (except where Leasehold Improvements are involved in Fair Market Value – In Place value), Property not on site (unless specifically identified as such in this Report), Raw Materials, Packaging Supplies, Finished Goods, Refrigeration Equipment (regarding Real Estate), and Licensed Vehicles

I provided the client with an Electronic Version of the Appraisal Report.

The resources used in formulating the opinion of value included:
- The experience of the appraiser, and internal database information.
- Comparable data gathered in the form of quotations or priced advertising from used machinery dealers and advertising publications and/or websites.
- Discussions with other used machinery dealers, appraisers, new machinery dealers, auctioneers, and machine tool builders.
- Consulting recent auction reports.

No investigation was made into the legal fee or title to the appraised property. The report will consider that all of the items enumerated to be free and clear unless otherwise noted.

**Limiting Conditions:** No extraordinary assumptions or limiting conditions were required in this analysis. The General Assumptions & Limiting Conditions and the Specific Assumptions and Limiting Conditions are detailed in the relevant section of this report.

4



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131

## Facility Condition Comments

The facility is in a manufacturing complex in the Avondale neighborhood of Chicago. The building is approximately 20,000 square feet with an open production area.  It has high lofted wooden bow truss ceilings, skylights, exposed brick, timber construction, floor-to-ceiling windows, a courtyard entrance and a deck that overlooks the North branch of the Chicago River . The floors are concrete with in-floor drains. All areas were clean and neat with no indication of any structural damage observed.

## Equipment Condition Comments

The equipment inspected at Metropolitan Brewery was standard for the industry.  All units were from well-known, well-respected manufacturers in the industry. Most units were manufactured between 2015 and the present. Well within the expected useful life of this equipment. In both age and condition, the equipment was above average and would be considered desirable if place on the used equipment marketplace.

## Industry Comments

The global beer industry suffered greatly during the Covid-19 pandemic. This industry is largely tied to the hospitality sector which experienced shutdowns and steep decline in sales. Most breweries were not able to offset this loss in revenue with supermarket sales. This contributed to more breweries shuttering operations. With climbing costs, high rents and supply chain challenges we are seeing more and more brewery businesses fail with brewery closings on the rise.  The equipment from these closings has saturated the used equipment market bringing equipment values down.



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)   773.548.4131

## *Opinions of Value*

**Report Date:**     8/18/2023
**Effective Date:**   8/9/2023

It is our estimate that the value, as defined, of the assets described in the attached list, of equipment at 3057 N Rockwell Street Chicago, IL 60618 United States would be approximately:

## Forced Liquidation Value: $727,100.00 USD

It is important to point out that these estimates of values are submitted to you for consideration only for the purpose intended.  They are not to be misconstrued or used for anything else except for the definitions so stated.

Thank you again for the opportunity to be of assistance and if we can be of further assistance or answer any additional questions, please do not hesitate to contact myself or Howard Newman, President of Loeb Appraisal.

Sincerely,



**HOWARD  NEWMAN, ASA, CEA**
**PRESIDENT OF LOEB**

**STAN CZUPRYNA, CEA**
**SENIOR APPRAISER**

6



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632) 773.548.4131

## Certification (as of 8/18/2023)

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.
- Our company has performed no services, regarding the property that is the subject of this report within the **three (3) year** period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this report.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (2020-2021 Edition).
- I have conformed with the EAANA Code of Ethics and am in compliance with EAANA CSA program requirements.
- I have made a personal inspection of the personal property that is the subject of this report.
- No one provided significant professional assistance to the person signing this report unless otherwise stated.
- The Association of Machinery and Equipment Appraisers has a mandatory reaccreditation program. I am in compliance with that program.
- The American Society of Appraisers has a mandatory reaccreditation program for all of its Senior Members. I am in compliance with that program.

Sincerely,

**HOWARD NEWMAN, ASA, CEA**
**PRESIDENT OF LOEB**

**STAN CZUPRYNA, CEA**
**SENIOR APPRAISER**







8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)   773.548.4131

## Statement of General Assumptions and Limiting Conditions

- All the information provided by others has been assumed to be correct and has been used in this report accordingly. No responsibility is taken for the accuracy of same. Any unknown or hidden conditions existing at the time of inspection could alter estimates.
- No investigation has or will be conducted regarding environmental issues. All appraised equipment is considered free of all environmental problems.
- All data and estimates set forth in this report are rendered solely for the stated valuation date and purpose intended and for the sole use of those who receive the report directly from us. All estimates are an opinion based on an estimate, true and accurate to the best of the appraiser's knowledge and belief. No guarantee is expressed or inferred as future values may change due to market conditions.
- Personal inspection of the property appraised has been made unless otherwise noted.
- This appraisal has been made in accordance with accepted appraisal practices in accordance with the ***Uniform Standards of Professional Appraisal Practice*** and reflects the best judgment of the appraiser. When appropriate, new and used equipment dealers have been consulted for comparable prices and catalogs; trade publications and comparative results of auction sales have been utilized.
- No investigation of legal fee or title to the property has been made and the stated claim to the property has been assumed to be valid.  Value(s) stated assumes equipment is being sold with "free and clear" title.
- The fee for our appraisal does not include the writer or our representative attending any business meetings or court hearings that may be required by the parties involved. We are available for this service on a fee basis.
- No consideration has been given to liens or other encumbrances, which may be against the property, other than those (if any) discussed in this report.
- No financial reporting or data has been reviewed
- The fee for this appraisal is not contingent upon the values reported and our liability is limited to the fee collected.
- The appraiser has no financial interest in the property appraised. Because we are involved with buying and selling of machinery, it is possible that we have sold machinery to or bought machinery from this client in the past.  It is also possible that we will sell to them or buy from them in the future.
- Other limitations or assumptions (if any) are defined and individually set forth at that point as related to the subject.
- Both parties acknowledge that facsimile copies of signatures are equivalent to original signed signatures.

## Hypothetical Assumptions

- None

## Extraordinary Assumptions

- None



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)  773.548.4131

## Methodology: Valuation Definitions Provided in this Report

*Public Auction / Forced Liquidation Value*
"An opinion of the gross amount, expressed in terms of money, that typically could be realized from a properly advertised and conducted public auction, with the seller being compelled to sell with a sense of immediacy on an as-is, where-is basis, as of a specific date." (American Society of Appraisers-ASA) All bids being made on an "as is–where is" basis, cash terms, with buyers responsible for removal at their risk and expense.  This is a forced sale concept in short terms (2-3 months). The consideration given to age and condition of the subject property, geographic location, difficulty of removal, adaptability or specialization, and other factors that affect marketability.  Any deletions or additions could alter advertising appeal and would affect the total value.  Value stated assumes equipment is being sold with "free and clear" title.

*These values are the opinion of the appraiser and these opinions cannot be interpreted as a guarantee of value.*

9



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)  773.548.4131

## Valuation Approach

There are three (3) approaches to value:

### Market Approach

The market approach involves a collection of market data pertaining to the subject assets being appraised. This approach is also known as the "comparison sales approach".  The primary intent of the market approach is to determine the desirability of the assets and recent sales or offerings of similar assets currently on the market in order to arrive at an indication of the most probable selling price for the assets being appraised.  If the comparable sales are not exactly similar to the assets being appraised, adjustments must be made to bring them as closely in line as possible with the subject property.

### Cost Approach

The cost approach is based on the proposition that the informed purchaser would pay no more for a property than the cost of producing a substitute property with the same utilities as the subject property.  It considers that the maximum value of a property to a knowledgeable buyer would be the amount currently required to construct or purchase a new asset of equal utility.  When subject asset is not new, the current cost must be adjusted for all forms of depreciation as of the effective date of the appraisal.

### Income Approach

The income approach considers value in relation to the present worth of future benefits derived from ownership and is usually measured to the capitalization of a specific level of income.  This approach is the least common approach used in the valuation of machinery and equipment since it is difficult to isolate income attributable to such asset.

For the purpose of this report, it is our agreement that we have considered all three (3) approaches to value and we both agreed that the Market Value approach is the appropriate method of evaluation for this appraisal assignment.  **These values are the opinion of the appraiser and these opinions cannot be interpreted as a guarantee of value.**

10



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)  773.548.4131

---

## Your Project Team



**Howard Newman, ASA, CEA**
*President of Loeb*
(773) 451-3662 | howardn@loebequipment.com
*Howard is president and the fifth generation of the Newman family leadership at Loeb. He has over 18 years of experience in equipment purchases and sales, appraisals, auctions, and liquidations with advanced expertise in the food, pharmaceutical, cosmetic, and chemical industries. Howard attended the University of Delaware majoring in Business Management. He earned the designation of Senior ASA as administered by the American Society of Appraisers (ASA) as well as being a Certified Equipment Appraiser (CEA) as administered by the Association of Machinery and Equipment Appraisers (AMEA) and is a licensed auctioneer.*

---



**Stan Czupryna, CEA**
*Senior Appraiser*
(773) 496-5708 | stanc@loebequipment.com
*Stan joined Loeb in 2000, bringing with him over 30 years of food processing experience specializing in food, beverage and baking production as well as the pharmaceutical industry. Stan has a BS from Southern Illinois University and maintains a professional certification of Certified Equipment Appraiser (CEA) from the Association of Machinery and Equipment Appraisers (AMEA) as well as being USPAP certified.*

---

Appraisal Certifications







11

## Corporate Overview

**HELPING MANUFACTURERS AND FINANCIAL INSTITUTIONS LEVERAGE THEIR INDUSTRIAL ASSETS BY MANAGING THE EQUIPMENT LIFECYCLE SINCE 1880.**

Loeb is comprised of four primary business units including:



***Equipment Sales, Purchases, Rentals & Leasing***
***When it comes to your equipment needs, all roads lead to Loeb***
*Loeb specializes in high quality used processing and packaging equipment for the food, cosmetic, pharmaceutical, chemical and general packaging industries. Headquartered in Chicago, we maintain more than 150,000 square feet of warehouse space fully stocked with individual machines and complete lines from premier OEMs.*

**For more information, contact: Howard Newman, President**
howardn@loebequipment.com · **(773) 451-3662**



***Online & Webcast Auction Solutions***

*Loeb Auctioneers, a subsidiary of Loeb, is a full service auction division specializing in Webcast and Online Only auction asset disposition services. Our knowledge extends across many different industries in which we currently sell, appraise and finance machinery and equipment.*



***Certified Market Appraisals***

*Loeb Appraisal specializes in appraising machinery and equipment within the food, pharmaceutical, cosmetics and chemical industries. Our certified market appraisals give our customers clear insight to the capital assets and give financial partners the security to lend on their clients assets with a clear understanding of exit strategy should there be a needed to liquidate.*



***Equipment Term Loans***

*An affiliate of Loeb, Loeb Term Solutions offers alternative financing through its Equipment Term Loans for industrial machinery and equipment. Our expertise in the daily valuation and disposition of industrial equipment allows us to greater ability to capitalize on the values within complete plants and facilities.*

| *Global Headquarters* | *Southeast Offices* |
|---|---|
| Chicago, IL | Delray Beach, FL |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)    773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 3057 N. Rockwell, Chicago, IL. 60618 | Upstairs | | | | | | Office Furniture | | $        500 |
| 002 | 3057 N. Rockwell, Chicago, IL. 60618 | Roof | Aqua Products | DCS-144B-D4B | | 2015 | | Glycol 2-Stage Chilling Unit - 12 Hp, 144,000 BTU | | $      6,500 |
| 003 | 3057 N. Rockwell, Chicago, IL. 60618 | Mill Room | Oronoko | Sasquash | | 2017 | | 3 HP Double Roll Mill with Manual Gap Adjustment  - Grain Mill, 4-Roller 9x6 double pair & Control System | | $    11,500 |
| 004 | 3057 N. Rockwell, Chicago, IL. 60618 | Mill Room | | | | 2017 | | Chain Disk Drag Conveyor | | $      3,500 |
| 005 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | | | | 2017 | | Plastic Cone Bottom Malt Storage Tank | | $      1,000 |
| 006 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | | | | 2017 | | Chain Disk Drag Conveyor | | $      2,500 |
| 007 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | NSI | LT30B | 2016251 | 2016 | | 30 BBL 5 Tank Brewhouse with 90 BBL Hot and Cold Water Tanks - NSI/Newlands, Mash Mixer, Lauter Tun Boil Kettle, Heat Exchanger, Process Piping, Pumps, Valves, Pneumatics, & Control Sanitary FlowMeter, Process Piping, Pumps, Valves, Pneumatics, & Control Sanitary FlowMeter | 26, 28 | $  175,000 |
| 008 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | | | | | | (14) Minnesota Oak Barrels Complete with 3-Barrel Stands | | $      2,800 |
| 009 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | | | | | | (10) Portable Patio Heaters | | $        500 |
| 010 | 3057 N. Rockwell, Chicago, IL. 60618 | Brewhouse | | | | | | Misc. In Brewery Area Including; Shelves, Portable Tables, Chefs Cooler, Lockers, Auto Dump, Spent Grain Removal Tote, Misc. etc. | | $        500 |
| 011 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | Aldrich | AHFRU650X | 15F7464 | | | Low Pressure Steam Boiler, 3.14 million BTU with Model #GBS2G80S20LM37S Burner | 37 | $    20,000 |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 012 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | | | | | | **Miscellaneous in Utility Room Including** | | $ 1,300 |
| 013 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | AO Smith | | | | | Hot Water Heater for Shower | | Value Included with Above Item |
| 014 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | Marlo | | | | | Water Filtration | | Value Included with Above Item |
| 015 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | Husky | | | | | 30 Gallon 175 Psi 1.7 HP Portable | | Value Included with Above Item |
| 016 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | Campbell Hausfeld | CE 7051 | | | | 2 stage Air Compressor, 16 CFM, 60-gal Tank | | Value Included with Above Item |
| 017 | 3057 N. Rockwell, Chicago, IL. 60618 | utility Room | | | | | | Etc | | Value Included with Above Item |
| 018 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Pacific Brewery Systems | | | | | Delores | 60 Barrel, 15 Psi, Jacket, cone bottom, sampling port | 41 | $ 22,500 |
| 019 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | P800 | 120 Barrel 15 Psi, Jacket, cone bottom, sampling port | | $ 27,500 |
| 020 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | Hal | 120 Barrel, 15 Psi, Jacket, cone bottom, sampling port | 45 | $ 27,500 |
| 021 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Bavarian Brewery | | | | | Maschine nmensch | 50 Barrel, 15 Psi, Jacket, cone bottom, sampling port | | $ 22,500 |
| 022 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JB Northwest Inc. | | | | | Kitt | 30 Barrel, 15 Psi, Jacket, cone bottom, sampling port | | $ 18,500 |
| 023 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | | 2010 | Lore | 30 Barrel, 15 Psi, Jacket, cone bottom, sampling port | 44 | $ 18,500 |
| 024 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | | 2011 | Data | 30 Barrel, 15 Psi, Jacket, cone bottom, sampling port | | $ 18,500 |
| 025 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | | 2013 | Gigolo Joe | 60 Barrel, 15 Psi, Jacket, cone bottom, sampling port | | $ 22,500 |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 026 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | 2013 | Marvin | 60 Barrel, 15 Psi, Jacket, cone bottom, sampling port | | $      22,500 |
| 027 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | | Tom Servo | 60 Barrel , 15 Psi, Jacket, cone bottom, sampling port | | $      22,500 |
| 028 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Velo | FVF10 | V0015918 | 2007 | | Pressure Leaf DE Filter, 10 Square Meter | | $        7,500 |
| 029 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Alpha | | | | Wall-E | 60 Barrel Stainless steel Jacketed Brite Tank | 47 | $      12,500 |
| 030 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | Dot Matrix | 120 Barrel Stainless steel Jacketed Brite Tank | | $      20,000 |
| 031 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | JW Kent | | | 2013 | R2D2 | 60 Barrel Stainless steel Jacketed Brite Tank | | $      12,500 |
| 032 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | **Complete Can Line Including** | 51, 52, 53, 54 | $    165,000 |
| 033 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Cody | | | | | Depalletizer complete with Slip Sheet Removal, Small Single Filer, | | Value Included with Above Item |
| 034 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | Can Cleaner, 2 Lane Twist, One Lane Water, One Lane Air, | | Value Included with Above Item |
| 035 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Kayence | MKG | 129G10076546 1A3D | | | Coder | | Value Included with Above Item |
| 036 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | CCL45 | L855022023 | 2023 | | 6-Head Can Filler with Touch Screen Operator Panel, SS Frame | | Value Included with Above Item |
| 037 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | 180° Delrod Conveyor SS Frame Complete with Can Washer | | Value Included with Above Item |
| 038 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Inline | Paradigm700 | | | | Wrap Around Labeler Complete with Blower | | Value Included with Above Item |
| 039 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | Approx. 2 Foot x 2 Foot Accumulation conveyor etc. | | Value Included with Above Item |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 040 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | Etc | | Value Included with Above Item |
| 041 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | | | | | | Misc. In Area Including; 5 Sections Pallet Racking, Portable Tables, SS Drums, Hand Tools, Hand Carts, Pallet Jack, etc. | | $     2,000 |
| 042 | 3057 N. Rockwell, Chicago, IL. 60618 | Main Room | Siebel Brewing | | | | | 3-Tank Small Brew House for Testing | | $     8,500 |
| 043 | 3057 N. Rockwell, Chicago, IL. 60618 | Matl. Handling | Linde | E20 | A1X346A00198 | | | 2700 Lb. 3-Wheel, Electric Fork Truck with Side Shift and Dual Masts | | $     7,500 |
| 044 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | Meheen | M6 | | | | 6-Head Semi Automatic Bottle Filling Station Complete with Crown Pusher | 61 | $   10,000 |
| 045 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | Premier | KWSA1VCS | 14KW060 | 2014 | | Twin Station keg Washer Filler | 63 | $     8,500 |
| 046 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | Big Joe | M22 | M13071413 | | | Electric Pallet Jack Maximum Capacity 2,200 Lbs. | | $     4,000 |
| 047 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | Bally | | | | | 13 Foot x 13 Foot x 50 Foot Cooler, Complete with Top Mounted Condenser and Two 4-Door, 4-Fan Trenton Evaporators complete with Man Door and Sliding Fork Truck Door | | $     7,500 |
| 048 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | Dellatoffola | | SM357510 | 1996 | | Filter | | $     3,500 |
| 049 | 3057 N. Rockwell, Chicago, IL. 60618 | Warehouse | | | | | | Misc. In Filling Room Including; Parts, Tables, Sinks, Shelving Systems, etc. | | $     1,500 |
| 050 | 3057 N. Rockwell, Chicago, IL. 60618 | Fermenting Room | | | | | | 5 HP SS Centrifical Pump with AC Drive | | $     1,500 |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)  773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 051 | 3057 N. Rockwell, Chicago, IL. 60618 | Office 1 | | | | | | Miscellaneous In Area Including 2-Refridgerator/Freezers, SS Table with SS Cabinet Under, SS Sink with Drying Rack, Whirlpool Stacked Washer/Dryer, Coffee Mill, Coffee Brewer, Couch, Table, Chair | | $        500 |
| 052 | 3057 N. Rockwell, Chicago, IL. 60618 | Shop Area | | | | | | Misc. In Shop Area Including; Craftsmen Skill Saw, and Drills, Misc. Photo Equipment | | **Property of Others** |
| 053 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | **Miscellaneous in Tap Room Including** | | **$      6,000** |
| 054 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Couch, Chairs, Table, 3 Metro Shelves, | | Value Included with Above Item |
| 055 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Wood & SteelTables w/ Benches 8'x36" - Qty 5 | | Value Included with Above Item |
| 056 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Wood & SteelHigh Top Tables 6'x36" Qty 4 | | Value Included with Above Item |
| 057 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Wood & SteelSquare Top Tables 36"x36" - Qty 6 | | Value Included with Above Item |
| 058 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Bar Stools w/ Backs - Qty 48 | | Value Included with Above Item |
| 059 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Chairs - Qty 24 | | Value Included with Above Item |
| 060 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Aluminum Patio Tables 72"x35" w/ Benches - Qty 14 | | Value Included with Above Item |
| 061 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Aluminum Patio Tables 35"x35" w/ 4 Chairs - Qty 2 | | Value Included with Above Item |
| 062 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Walk-in Cooler 6'x14'x7.5' w/ 0.75 hp chilling unit | | Value Included with Above Item |
| 063 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Beer Taps and Equipment - Qty 14 | | Value Included with Above Item |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)    773.548.4131

| 23_ Appr # | Plant Location | Location within Plant | OEM | Model | Serial# | Year Built | Client Ref # | Machine Description | 23_ Report Photo # | 23_ Report FLV |
|---|---|---|---|---|---|---|---|---|---|---|
| 064 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | OFFICE/KITCHEN Desk 40"x30" w/ drawer unit - Qty 3 | | Value Included with Above Item |
| 065 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Desk 80"x30" w/ drawer unit - Qty 3 | | Value Included with Above Item |
| 066 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Office Chairs, high back - Qty 6 | | Value Included with Above Item |
| 067 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Washer/Dryer Stack, 3.5 cu. Ft. | | Value Included with Above Item |
| 068 | 3057 N. Rockwell, Chicago, IL. 60618 | Tap Room | | | | | | Etc | | Value Included with Above Item |



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131



Picture 1: 26

Picture 2: 28

Picture 3: 37

Picture 4: 41



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131



Picture 5: 44



Picture 6: 45



Picture 7: 47



Picture 8: 51



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131



Picture 9: 52



Picture 10: 53



Picture 11: 54



Picture 12: 61



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)   773.548.4131



*Picture 13: 63*



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632) 773.548.4131

August 3, 2023

**Prepared for:**
Goldstein and McClintock
Matt McClintock
111 W Washington St Ste 1221
Chicago, Illinois 60602
312-337-7700
mattm@goldmclaw.com

**Equipment/Inspection Location:**

TBD

**Values Requested:**
Public Auction/Forced Liquidation Value

**Intended Use:**
Liquidation

Thank you for trusting us at Loeb to handle this project for you. Per our communication, this letter confirms our arrangement regarding the appraisal you wish us to perform. Please verify that all the facts are correctly stated in this engagement Letter. If anything is incorrect, please contact our office immediately so we can make the necessary corrections. *It is very important to establish a clear understanding of the Appraisal Scope to avoid additional costs later on in the process.*

Loeb will perform an appraisal of the machinery and equipment at the above-referenced location(s). The total value will be provided in letter form with a Statement of Conditions and a signed Certificate of Appraisal.

The Appraisal Report will conform to the Uniform Principals of Professional Appraisal Practice (USPAP) and Code of Ethics of the Association of Machinery and Equipment Appraisers (AMEA) and will be performed by an accredited appraiser (ASA) and Certificated Equipment Appraiser (CEA).

This proposal is valid for two weeks from the date of issue.



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632)  773.548.4131

**Definitions of Values:**

**FORCED LIQUIDATION VALUE (AUCTION):** A professional opinion of the estimated most probable price expressed in terms of cash in U.S. dollars which could typically be realized at a properly advertised and conducted public auction sale, held under forced sale conditions and under present day economic trends, as of the effective date of the appraisal report. Conclusions taken into consideration are physical location, difficulty of removal, physical condition, adaptability, specialization, marketability, overall appearance and psychological appeal. Further, the ability of the asset group to draw sufficient prospective buyers to ensure competitive offers is considered. All assets are to be sold on a piecemeal basis 'as is' with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the total assets appraised could change the psychological and or monetary appeal necessary to gain the price indicated.



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB (5632)   773.548.4131

## Report Timing, Turnaround & Fees:



Gold Level Appraisal

| | |
|---|---|
| **Timing** | *Appraisal provided within 2 weeks of physical inspection* |
| **Detail** | *Grouped valuation of items under $2500 USD throughout site(s)* |
| **Expense** | *Actual Out-of-Pocket Expenses Charged*<br>***LOCAL:** No charge for expenses within 75 miles of Loeb's Global Headquarters or Satellite Offices* |
| **Format** | *Report provided in standard PDF format*<br>*Abbreviated asset list available in MS Excel format* |
| **Photos** | *Photos provided for Top 12 assets*<br>*Direct link to all photos available by request* |
| **Industry Insight** | *Overall plant conditions*<br>*Condition of equipment*<br>*Overall Status of Industry* |
| **Fee** | *$5,500.00* |

## Scope of Investigation

Our investigation will include a physical inspection of the property described above, as well as the gathering and analysis of appropriate data as stated in this letter including our Statement of Limiting Conditions which is included as part of this Proposal and Engagement Letter. As part of the physical inspection Loeb will question the site(s) contact(s) regarding such subjects as age, removal problems and whether any leased items exist but we make no legal search regarding the ownership.

## Assets Not to be Appraised

Office Furniture and Equipment, Computer Software and Hardware, Leased Items, Rented Items, Building Utilities, Leasehold Improvements (except where Leasehold Improvements are involved in Fair Market Value – In Place value), Property not on site (unless specifically identified as such in this Report), Raw Materials, Packaging Supplies, Finished Goods, Refrigeration Equipment (regarding Real Estate), and Licensed Vehicles. Specific arrangements can be made to add vehicles.



8609 W. BRYN MAWR, SUITE 208, CHICAGO, IL 60631
800.560.LOEB(5632) 773.548.4131

## Conclusion

Thank you for your confidence in our services.  Please review this Proposal and Engagement Letter carefully for accuracy so that we can best serve your appraisal needs.  Furthermore, upon your review, please let me know how you would like to proceed.

Please don't hesitate to contact us should you have any questions or requirements.

Respectfully,

**Howard Newman ASA, CEA, CSA**
**President**
**Loeb Equipment Supply Company**

## Engagement Signatures

On behalf of Goldstein and McClintock, I authorize **LOEB EQUIPMENT SUPPLY COMPANY** to conduct this Engagement regarding  in accordance with the terms and conditions outlined herein. Terms are payment in full prior to issuing the report.

| | | **Cost** | **Engagement Level** |
|---|---|---|---|
| Signature: | | | |
| Name: | Tracy L Hurst | *$5,500* | **Harry Newman** |
| Title: | President | | |
| Date: | 8/04/2023 | | |

# EXHIBIT B

*Debtors' Estimated Liquidation Analysis*

| | Chapter 11 | Chapter 7 |
|---|---|---|
| Projected Cash at End of February (including projected auction proceeds)[1] | $695,170 | $695,170 |
| Vehicle | $7,000 | $7,000 |
| IP Sale[2] | $30,000 | $30,000 |
| Accounts Receivable | $0 | $0 |
| Inventory | $0 | $0 |
| Non-Insider Preference Actions | $0 | $0 |
| Insider Preference Actions | $0 | $0 |
| *Total Assets at Liquidation Value* | **$732,170** | **$732,170** |
| | | |
| | | |
| Chapter 7 Trustee Fees (sliding scale) | $0 | $39,859 |
| Chapter 7 Admins (Trustee's counsel getting up to speed and effectuating liquidation)[3] | $0 | $60,000 |
| Debtor's Counsel Fees (other than from retainer) | $45,000 | $45,000 |
| Subchapter V Trustee Fees | $6,500 | $6,500 |
| U.S. Trustee Fees | $0 | $0 |
| *Total Costs* | **$51,500** | **$151,359** |
| | | |
| **Projected Net Distributable Proceeds** | $680,670 | $580,812 |
| | | |

1. Based on / consistent with projections from final cash collateral budget.
2. May be materially more -- $30,000 is an expected starting bid.
3. Assumes Trustee retains counsel and additional costs getting up to speed.